Hugh MOON, Jr., Petitioner,

v.

UNITED STATES DEPARTMENT OF LABOR, Respondent.

No. 83–1015.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 2, 1983.

Decided Feb. 28, 1984.

Jonathan H. Waxman, Washington, D.C., for petitioner. Alexander S. McNabb, was on brief, for petitioner.

Stanford Dubin, U.S. Dept. of Labor, Washington, D.C., for respondent.

1. The parties' briefs indicate that Moon became a sawyer in March 1978. Brief for Petitioner at 3; Brief for the Secretary of Labor at 3. A claim form in the record indicates that Moon applied for the sawyer job in January 1978. Joint Appendix (J.A.) at 12. Since it is undisputed that petitioner worked as a sawyer during the statutory period, the exact date on which he started is irrelevant to our decision.

Before TAMM and MIKVA, Circuit Judges, and BAZELON, Senior Circuit Judge.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

Petitioner challenges the computation of benefits due him under Title II of the Redwood National Park Expansion Act of 1978 (the Act), Pub.L. No. 95–250, 92 Stat. 172 (1978). Benefits under the Act are based on the highest paid job an employee held during a specified period. The sole issue in this case is whether the Secretary of Labor (the Secretary) correctly interpreted the Act in determining petitioner's highest paid job. Because we find that the Secretary did not provide an adequate, reasoned explanation for his decision, we remand.

I. BACKGROUND

Title II of the Redwood National Park Expansion Act of 1978 establishes an economic assistance program for forest industry employees who were laid off as a result of the expansion of Redwood National Park. Section 207(a) of the Act provides weekly layoff benefits for eligible employees. The amount of the weekly benefit is calculated based on the "wage rate applicable ... *to the highest paid job held by [the] employee, other than by temporary assignment* ... from January 1, 1977, through [March 27, 1978] ...." (emphasis added). Petitioner, Hugh Moon, challenges the amount of his award under section 207(a). Specifically, he disputes the Secretary's determination of his "highest paid job" during the statutory period.

During most of the statutory period, petitioner was employed as a relief mill worker, or "reliefman," at a rate of $7.58 per hour. In early 1978, petitioner was awarded a position as sawyer,[1] at a rate of $9.26 per hour, when another employee was injured.[2]

2. Petitioner was awarded the sawyer position under a bid system outlined in the Collective Bargaining Agreement between petitioner's employer and the union. Supplemental Appendix at 11.

Petitioner remained in the sawyer position for eleven months, until the injured employee returned to work.

The California Employment Development Department (EDD), which is charged with administering Title II of the Act, 29 C.F.R. § 92.1(b) (1983), determined that petitioner was eligible for benefits under section 207. In determining the amount of benefits, the EDD apparently concluded that petitioner's job as a sawyer was a "temporary assignment." Joint Appendix (J.A.) at 25. Under the Act, a "temporary assignment" cannot be considered the "highest paid job" from which benefits are computed. Therefore, the EDD based the computation of benefits on the lower wage rate applicable to petitioner's position as a reliefman.

Petitioner appealed the EDD's decision to the California Unemployment Insurance Appeals Board. After a hearing, the Administrative Law Judge (ALJ) reversed the EDD. The ALJ concluded that petitioner's placement in the higher paying sawyer job was not a "temporary assignment" within the meaning of the Act because it was for a substantial and indefinite period of time and would terminate only if the former worker returned to his position. Therefore, the ALJ concluded that the sawyer job was petitioner's "highest paid job" and, accordingly, that benefits should be computed with reference to that wage rate. J.A. at 24–25.

The Secretary *sua sponte* reversed the ALJ.[3] Ruling that the petitioner's job as sawyer was a "temporary assignment," the Secretary calculated petitioner's weekly benefit based on the reliefman's wage rate. J.A. at 25–26.

Petitioner here alleges that the Secretary's decision was erroneous, in violation of the Administrative Procedure Act, and unsupported by substantial evidence.[4]

## II. DISCUSSION

The controversy in this case concerns the meaning of the statutory phrase "temporary assignment." The disputed phrase is not defined in the Act or its implementing regulations[5] and is not discussed in the legislative history. Petitioner contends that the Secretary's interpretation of the phrase is erroneous; he argues that the Secretary should use the collective bargaining agreement to define "temporary assignment." We do not reach this issue because we find that the Secretary did not provide a reasoned basis for his conclusion that petitioner's position as sawyer was a "temporary assignment."

In determining that the petitioner's job as sawyer was a "temporary assignment," the Secretary stated only that:

> The record in this case clearly establishes that the claimant's permanent job with his affected employer was that of reliefman. In response to a question asked by his union representative the claimant responded that the sawyer position which he was awarded was posted by the employer as a temporary bid job. This position was posted as a temporary bid job because a sawyer became temporarily disabled and the claimant held the job until that employee returned to work. The claimant cannot be considered to have held the position of sawyer other than by temporary assignment since he reverted to a reliefman upon return of the disabled employee to the sawyer position.

J.A. at 27.

Generally, a reviewing court accords some degree of deference to an agency's interpretation and application of a statutory term, particularly where the agency

---

3. The Secretary of Labor delegated responsibility for administration of Title II of the Act to the Assistant Secretary for Labor-Management Relations. Brief for the Secretary of Labor at 3 n. 3. For ease of discussion, we will refer to the Assistant Secretary as the Secretary.

4. We have jurisdiction to review the Secretary's determination under section 103(h) of the Act, 16 U.S.C. § 79*l*(h) (1982), which provides for review in the appropriate United States Court of Appeals in the same manner as prescribed by 19 U.S.C. § 2395 (1982).

5. The implementing regulations are found at 29 C.F.R. §§ 92.1–92.50 (1983).

is charged with administering the statute. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). To fulfill its function under any appropriate standard of review, however, a court must be able to ascertain the reasons for an agency's decision. We cannot determine whether an agency has acted correctly unless we are told what factors are important and why they are relevant. Therefore, an agency must provide a reasoned explanation for its actions and articulate with some clarity the standards that governed its decision. *See Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 194–97, 61 S.Ct. 845, 852–54, 85 L.Ed. 1271 (1941); *Matlovich v. Secretary of the Air Force,* 591 F.2d 852, 856–61 (D.C.Cir.1978); *Public Media Center v. FCC,* 587 F.2d 1322, 1331–32 (D.C.Cir.1978).[6]

■ The Secretary's decision lacks the kind of reasoned explanation and articulation of standards that we find necessary to a proper review of agency action. After examining the Secretary's order, we are unable to ascertain the rationale by which he concluded that petitioner's job as sawyer was a "temporary assignment." Although the order provides a synopsis of the facts surrounding petitioner's tenure as a sawyer, it fails to identify their significance. The Secretary does not indicate whether he relied primarily on the length of time the petitioner held the job, the fact that the job could and did end when the injured employee returned, or the fact that the job was labelled a "temporary bid job."[7] These deficiencies demonstrate that the Secretary made no attempt to develop a coherent definition of "temporary assignment."

■ Moreover, the absence of articulated standards and reasons makes it impossible for this court to determine whether the Secretary followed his statutory mandate to interpret the Act's language so as to promote its remedial purpose. Section 213(f) of the Act provides:

> In all cases where two or more constructions of the language of this title would be reasonable, the Secretary shall adopt and apply that construction which is most favorable to employees. The Secretary shall avoid inequities adverse to employees that otherwise would arise from an unduly literal interpretation of the language of this title.

Redwood National Park Expansion Act of 1978, Pub.L. No. 95–250, § 213(f), 92 Stat. 163, 182 (1978). Although the legislative history contains no discussion of this provision, we believe its meaning is plain. Section 213(f) requires the Secretary to read the provisions of Title II in the light most favorable to employees. He is required to consider alternative interpretations of disputed language and to determine which of the reasonable alternatives is most advantageous to employees. By using the word "shall," Congress made clear that where two or more reasonable interpretations are

6. The principle that an agency must provide reasons and articulate the standards governing its actions stems from the "functional relationship existing between reviewing court and administrative agency." *Public Media Center v. FCC,* 587 F.2d 1322, 1331 (D.C.Cir.1978). We believe an administrative explanation is necessary to conduct an intelligent review.

7. The need for a more reasoned explanation is made apparent by a review of the facts. The record indicates that petitioner's job as sawyer was for an indefinite period; he could remain in the position unless and until the former injured employee returned. The job could have lasted for five months or five years. If the former employee never returned, petitioner could have remained in the job as long as he desired. We cannot determine from the Secretary's decision whether any of these different factual situations would have affected the classification of the sawyer job as a "temporary assignment."

In his brief, the Secretary asserts that the petitioner's job was temporary because it was of limited duration. Brief for the Secretary of Labor at 8. We cannot accept counsel's post hoc explanation for agency action. We must review the decision on the reasons articulated by the agency. *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co.,* —— U.S. ——, 103 S.Ct. 2856, 2870, 77 L.Ed.2d 443 (1983). Moreover, we do not find this reasoning persuasive. Defining "temporary assignment" as a job of limited duration does not sufficiently articulate a reasoned standard. This open-ended definition could apply to petitioner's job as reliefman as well as to his assignment as sawyer.

possible, the Secretary *must* adopt the construction of the Act that favors employees. *See Association of American Railroads v. Costle,* 562 F.2d 1310, 1312 (D.C.Cir.1977) ("shall" is the language of command in statutes).

The Secretary's decision here gives no indication that he evaluated his conclusion in light of section 213(f). We express no opinion as to the proper interpretation of the phrase "temporary assignment"—that is the Secretary's province. We do believe, however, that section 213(f) requires the Secretary to consider and evaluate alternative interpretations of "temporary assignment." [8] The final decision interpreting the phrase should contain findings regarding the impact of these alternatives on employees and explain the reasons for the particular interpretation adopted.[9]

We therefore remand this case to the Secretary for further proceedings consistent with this opinion.[10]

*It is so ordered.*

8. The Secretary argues that section 213(f) applies only if there are reasonable alternatives. In this case, he asserts that he has adopted the sole reasonable interpretation of the disputed phrase. As we have already concluded, however, the Secretary's decision does not adequately explain or even set forth his interpretation of the disputed phrase. Moreover, contrary to the Secretary's assertion, we do not find it unreasonable to define the phrase, as petitioner suggests, with reference to its usage in the trade. *See, e.g., Mobil Oil Corp. v. Federal Energy Admin.,* 566 F.2d 87, 97 (Temp. Emer.Ct.App.1977).

9. We do not determine at this time how to decide whether a construction favors employees in a particular case. It is conceivable, for example, that an interpretation that favors employees as a class will not favor an individual employee. We need not decide here how to resolve such an issue. We conclude only that the Secretary must consider section 213(f) when interpreting the statute.

10. The Ninth Circuit has interpreted section 213(f) as modifying the normal deferential standard of review. In other words, if there are two reasonable interpretations of the Act, "judicial review will focus on whether the Secretary has adopted the interpretation most favorable to employees ...." *Barker v. Donovan,* 721 F.2d 271, 273 n. 1 (9th Cir.1983). We do not disagree with the Ninth Circuit. We merely determine in this case that the issues should be addressed in the first instance by the Secretary.