**ALEGRIA I, INC., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**Heritage Communications, Intervenor.**

**No. 89–1096.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 20, 1989.

Decided June 15, 1990.

Dennis S. Kahane, San Francisco, Cal., for appellant.

Gregory M. Christopher, Counsel, Federal Communications Commission ("FCC"), with whom Diane S. Killory, Gen. Counsel, and Daniel M. Armstrong, Associate Gen. Counsel, FCC, Washington, D.C., were on the brief, for appellee.

Robert L. Olender and Lee J. Peltzman, Washington, D.C., entered appearances for intervenor.

Before EDWARDS, BUCKLEY, and WILLIAMS, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

Concurring opinion filed by Circuit Judge WILLIAMS.

BUCKLEY, Circuit Judge:

This appeal arises out of the mutually exclusive applications of appellant Alegria I, Inc. and intervenor Heritage Communications for authority to construct a new AM radio station in northern California. During the course of the proceedings, Heritage submitted several amendments to its application. After a comparative hearing, the Federal Communications Commission awarded the permit to Heritage. Alegria contends that, under the plain language of the Commission's rules, Heritage's amendments should have been found disqualifying and its application dismissed. Because the Commission failed to give an adequate explanation for its decision, we remand for further proceedings.

## I. BACKGROUND

### A. Legal Background

Applications for authority to construct new AM radio stations are processed as nearly as possible in the order in which they are received. As applications are submitted, they are assigned file numbers, and the applications are processed in numerical sequence by file number. When an application reaches the front of the line, the FCC publishes a cut-off date by which all mutually exclusive applications or petitions to deny must be filed. 47 C.F.R. § 73.3571(c) (1988). If no competing application or petition is filed by that date, the application is protected and is eligible for a summary grant of the license. 47 C.F.R. § 73.3591. If one or more competing applications have been timely filed, the Commission will hold a hearing to consider the applications. 47 C.F.R. § 73.3593.

If, however, an applicant amends its application with a "major" amendment, the Commission's rules provide that the application will be assigned a new file number and placed at the end of the line. 47 C.F.R. § 73.3571(j)(1). In that event, the application "will be treated as though it were a new application filed on the day of its amendment, and its rights will be determined accordingly." *AM Processing Procedure,* 18 Rad.Reg. (P & F) 1565, 1567 (1959). Thus, if there are already one or more mutually exclusive applications on file and the cut-off date for submitting additional applications has passed, the assignment of a new file number is, in effect, fatal to the application. *See id.* The "major" amendments relevant to this case are those that increase power or change the station location. 47 C.F.R. § 73.3571(c), (j).

These rules were adopted thirty years ago at a time when the Commission was burdened by a burgeoning backlog of applications. They were designed to reduce delays and administrative workload by discouraging the filing of major amendments to pending applications. *AM Processing Procedure,* 18 Rad.Reg. (P & F) at 1566–67. In recent years, however, the Commission began to ameliorate the severe consequences of filing a major amendment by giving the applicant an opportunity to retract it. *See, e.g., Golden Shores Broadcasting, Inc.,* 2 FCC Rcd 4743, 4744 (1987); *St. Croix Wireless Co.,* 2 FCC Rcd 4447 (1987); *Redwood Television Ministries, Inc.,* 52 Rad.Reg.2d (P & F) 1365, 1369 & n. 14 (1982).

In *Golden Shores,* the Commission explained this policy as follows:

> It is apparent ... that where an applicant obviates the need to comply with public notice or other processing requirements by withdrawing or revoking its major amendment, the processing of other applications is not disrupted and no prejudice whatsoever results to other applicants. In these circumstances, the harmful processing delays sought to be prevented by the rule simply do not occur, and there is no point in requiring the assignment of a new file number to the application.... The rule was designed to prevent repetitive processing of applications, not to punish applicants who inadvertently file major amendments. Indeed, it is fair to assume that, in virtually all cases, applicants do not intentionally amend applications so as to remove themselves from the hearing.

2 FCC Rcd at 4744. The applicability of this policy to the Heritage application is at issue in this appeal.[*]

### B. Factual Background

In October 1981, Alegria and Heritage (as well as several other parties who have dropped out of the proceeding) filed appli-

---

[*] The Commission has recently revised its rules explicitly to allow the withdrawal of disqualifying major amendments. *See* Broadcast Services; Withdrawal of Disqualifying Major Change Amendments, 55 Fed.Reg. 19,264 (1990) (to be codified at 47 C.F.R. Part 73). As the new rules were not in effect at the time the challenged order was issued, they do not affect our disposition of this case. *See Reservation Tele. Co-op. v.*
FCC, 826 F.2d 1129, 1134 (D.C.Cir.1987) (court of appeals cannot affirm agency's decision on any rationale other than one relied on by agency); *Aaacon Auto Transport v. ICC,* 792 F.2d 1156, 1161 (D.C.Cir.1986) (in general, agencies must apply law in effect at time decision is made), *cert. denied,* 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 834 (1987).

cations to construct new AM radio stations at Marina and Yountville, California, respectively. The applications were classified as "mutually exclusive" because of problems of radio interference. Accordingly, only one of the applications could be granted.

In April 1982, after the cut-off date for new applications, Heritage filed an amendment changing its proposed transmitter site and increasing its proposed nighttime power from 250 watts to one kilowatt. Although the amendment was initially accepted, the Commission subsequently advised Heritage that its amendment constituted a major change and, on December 15, 1982, issued a notice deleting its application from the list of accepted applications.

On December 17, Heritage filed another amendment that withdrew the April amendment's power increase, but not its change in transmitter site. On December 27, Alegria filed a motion to dismiss Heritage's application, arguing that 47 C.F.R. § 73.3571(j) required dismissal because the April amendment was major and was not cured by the December amendment withdrawing the nighttime power increase. The motion was later denied.

In March 1983, the FCC again published its acceptance of Heritage's application, specifying the reduced nighttime power of 250 watts. Subsequently, The Pete Pappas Company, license holder of AM station KTRB in Modesto, California, filed a petition to deny the Heritage application, alleging that its signal would interfere with that of KTRB.

In response to the Pappas petition, in July 1983 Heritage submitted yet another amendment changing its transmitter site, this time to avoid interference with the Pappas station. As a result, in August 1983 another mutually exclusive applicant, Beardslee Broadcasting, Inc., filed a petition for major amendment designation, contending that Heritage's July 1983 amendment would cause "massive increased interference" with Beardslee's application. Beardslee urged that Heritage's amendment be assigned a new file number pursuant to section 73.3571(j)(1).

In February 1984, the Commission's Mass Media Bureau ("Bureau") finally considered the challenges to the several Heritage amendments. *Arby R. Beardslee,* Mimeo 2547 (Mass Media Bureau, Feb. 29, 1984) ("Hearing Designation Order"). The Bureau acknowledged that the April 1982 amendment was "major" but termed the December 1982 amendment "minor" even though it proposed that daytime operations be conducted at the new transmitter site first proposed in the April 1982 amendment. *Id.* at 5. As to the July 1983 amendment, the Bureau agreed with Pappas and Beardslee that it was major because of the interference it would create with Beardslee. *Id.* Rather than dismiss the application, however, the Bureau explained that because it assumed that Heritage would rather withdraw its July 1983 amendment than forfeit its status in the hearings, the Bureau would refuse to accept the amendment for filing. *Id.*

As a result, Heritage's application reverted to its status prior to the July amendment—leaving intact the problem of interference with the Pappas station. Although the Bureau acknowledged that "[u]nder normal circumstances, Commission policy would dictate that the Heritage application be dismissed," it declared that "[i]n this instance ... the public interest would be better served by allowing Heritage to remain in the proceeding." *Id.* Accordingly, the Bureau gave Heritage thirty days in which to submit to the Administrative Law Judge ("ALJ") an amendment that would eliminate the interference with the Pappas station. *Id.* at 10.

On March 2, Heritage, along with Beardslee and two other applicants, submitted for approval a settlement agreement under which Beardslee would be paid $25,000 for the voluntary dismissal of its application. The ALJ approved the agreement and dismissed Beardslee's application with prejudice. The application's dismissal removed the interference problems that had prevented acceptance of Heritage's July 1983 amendment. Because that amendment would still eliminate the interference with the Pappas station, Heritage resubmitted

it, the ALJ accepted it over Alegria's objection, and the comparative hearing began.

In March 1986, the ALJ awarded the construction permit to Heritage. Alegria then filed applications for review with the Review Board and the full Commission, raising issues not relevant to ᵗhis appeal; these applications were denieᵤ. Alegria also filed a separate application for review of the Hearing Designation Order, contending that Heritage was improperly allowed to file major amendments and should not have been permitted to remain a party to the proceeding. The Commission denied review without addressing that basic question. *Alegria I, Inc.*, 4 FCC Rcd 587, 590 (1989).

## II. DISCUSSION

The sole issue on appeal is whether the Commission erred in not dismissing Heritage's application as a result of any of the three amendments submitted by Heritage. Alegria contends that each of them should have resulted in a new file number and the consequent dismissal of the application, and that by failing to dismiss Heritage's application, the FCC ignored the plain language of 47 C.F.R. § 73.3571(j) in violation of the accepted principle that agencies must follow their own rules. *See, e.g., Reuters Ltd. v. FCC,* 781 F.2d 946, 950–51 (D.C.Cir.1986).

Although the Commission concedes that the April 1982 and July 1983 amendments were major and would have triggered a new file number under section 73.3571(j) had they been accepted, it defends its decision to allow Heritage to remain in the proceedings as within its discretion and consistent with both the public interest and its own precedent. The Commission explains, in its brief, that allowing the withdrawal of an amendment neither results in processing delays nor abridges any cognizable rights of other applicants; moreover, the withdrawal serves the public interest by providing the Commission a larger pool of applicants from which to choose. Thus, on the assumption that applicants will not intentionally file a suicidal amendment, the Commission has adopted a policy of allowing applicants to retract major amendments to avoid dismissal. It maintains that its decision to follow that policy in the case of Heritage was fully justified by the circumstances.

We do not quarrel with the FCC's assertion that a policy permitting the withdrawal of a major amendment existed at the time of the various proceedings here. Nor do we question that a common sense amelioration of the otherwise harsh consequences of the rule may well be in the public interest. As the Commission pointed out in *Golden Shores,* section 73.3571(j) "was designed to prevent repetitive processing of applications, not to punish applicants who inadvertently file major amendments." 2 FCC Rcd at 4744. Our problem is that nowhere in the order under review did the Commission explicitly invoke that policy, explain why the circumstances of this case justified its invocation or expansion, or spell out the public interest considerations that justified its tolerance of a succession of major amendments.

The Commission acknowledged at the outset that Heritage would ordinarily be assigned a new file number, thus taking it out of contention for the construction permit: "Under normal circumstances, Commission policy would dictate that the Heritage application be dismissed." Hearing Designation Order at 5. Nevertheless, it concluded—without any elaboration—that "[i]n this instance, . . . we believe that the public interest would be better served by allowing Heritage to remain in the proceeding." *Id.* Nor did the FCC offer any further comment on the issue when it affirmed the order on appeal. *Alegria I, Inc.,* 4 FCC Rcd at 590.

A simple invocation of "the public interest," without more, is an insufficient explanation for the FCC's failure to apply section 73.3571(j). The agency is obliged to provide a more reasoned, less inscrutable basis for its actions, *see Moon v. United States Dep't of Labor,* 727 F.2d 1315, 1318 (D.C.Cir.1984), and the *post hoc* explanations of counsel—no matter how reasonable—will not suffice. *See Reeder v. FCC,* 865 F.2d 1298, 1306 (D.C.Cir.1989).

Even if the Commission had cited its past practice in justification of its failure to apply section 73.3571(j), it is by no means clear that the Commission's actual treatment of Heritage's amendments was consistent with that practice. *Golden Shores* and the other prior decisions cited by the FCC appear to be based on the rationale that because the withdrawal of an inadvertently submitted major amendment would not result in the procedural disruptions the rule was designed to avoid, an applicant should be given the opportunity to repair its mistake and return to the *status quo ante. See, e.g., Golden Shores Broadcasting,* 2 FCC Rcd at 4744; *St. Croix Wireless,* 2 FCC Rcd at 4447.

In the present case, Heritage made no attempt to return to the *status quo ante.* In the case of the April 1982 amendment, Heritage responded to the FCC's initial delisting of its application by submitting another amendment—in December 1982—which withdrew the proposed power increase but left the change in transmitter site in place. Then, after Heritage submitted its July 1983 major amendment, the Mass Media Bureau allowed Heritage to withdraw the amendment but gave it thirty days to submit another amendment eliminating the interference caused by the April 1982 amendment. And when Beardslee's application was voluntarily dismissed, Heritage was permitted to resubmit its July 1983 amendment, which again changed the proposed transmitter site. Thus, at no time did Heritage return to the *status quo* as it existed prior to April 1982; rather, the Commission permitted Heritage repeatedly to amend its application until it was viable.

It may well be that the FCC's refusal to invoke section 73.3571(j) in this case represents a reasonable extension of its policy of permitting the withdrawal of "suicide" amendments. Such an extension, however, must be made not after the fact but in a carefully reasoned decision in which the policy is adequately explained and its parameters defined so that future applicants will know the rules of the game with which they are expected to comply.

### III. CONCLUSION

On the record before us, we are unable to discern the basis for the Commission's repeated refusal to comply with section 73.3571(j). An unexplained invocation of "the public interest" is not, and never has been, a substitute for the reasoned decisionmaking required of administrative agencies. Accordingly, we remand the case for further consideration in accordance with this opinion.

*So ordered.*

STEPHEN F. WILLIAMS, Circuit Judge, concurring:

Though 47 CFR § 73.3571(j) requires a new file number to be assigned "when [an application] *is amended*" with certain major changes, it nowhere defines what constitutes "amend[ment]" for these purposes. This case turns not on the literal terms of rule 73.3571(j), but on what procedure the Commission may follow in processing major amendments. Can the Commission refuse to accept a major amendment, or even retroactively withdraw acceptance of such an amendment, so as to give the would-be amending party a chance to rethink its decision? So long as an application is not finally modified by a major amendment without receiving a new file number, nothing in rule 73.3571(j) precludes such a forgiving amendment procedure, and so this court is bound to accept the Commission's interpretation if it has been adequately explained. See *United States v. Larionoff,* 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977) (court must accept an agency's interpretation unless "plainly inconsistent with the wording of the regulations").

The question before this court then (on which the majority properly focuses) is whether the Commission's actions below were consistent with its past precedent, or to the extent inconsistent, adequately reasoned and explained. The difficulty is that the Commission's precedent was evolving during the time these amendments were filed and the Commission never explained its actions. The Commission's only explanation below was in its 1984 Hearing Des-

ignation Order. See *Arby R. Beardslee*, 49 Fed.Reg. 9262, ¶¶ 8–11 at 9263–64 (FCC 1984). At that time, the crucial precedent needed to justify the Commission's action, *Golden Shores Broadcasting, Inc.*, 2 FCC Rcd 4743 (1987), had not yet been decided, and the Commission failed to articulate the reasons for its action. By 1989, when the Commission's final order was issued in this case, it could have relied on *Golden Shores*, but it ignored the entire issue.

On remand the Commission will have the opportunity to justify its actions on its precedent as it existed in 1989 and on any further evolution of the precedent that it reasonably explains. If the Commission relies on *Golden Shores*, the case may well turn on whether there is any real gulf between (1) the Commission's refusing to process a suicidal amendment and then ruling on applications as they stand, which is clearly allowed by *Golden Shores* and prior Commission precedents, and (2) the Commission's refusing to process a suicidal amendment (that of July 1983) and then allowing time for Heritage to straighten out one aspect of its December 1982 amendment which might also have been suicidal. (As the Commission never made a final finding on the interference problems of the December amendment, it need not be presumed to be a suicidal amendment.) At this point the two seem close enough that the path along *Golden Shores* may lead handily to the second. The Commission could also invoke new policy reasons to modify, extend or reconsider *Golden Shores*.