**ALEGRIA I, INC., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee.**

**Elizabeth Waters, Phyllis Moore, Gloria McKinley and Verna Rolls d/b/a Heritage Communications, Intervenors.**

**No. 91–1007.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 8, 1991.

Decided Nov. 1, 1991.

---

Mark Van Bergh, Washington, D.C., for appellant.

Jane E. Mago, Asst. Gen. Counsel, F.C.C., with whom Robert Pettit, Gen. Counsel, and Daniel M. Armstrong, Associate Gen. Counsel, were on the brief, for appellee. Gregory M. Christopher, Counsel, Washington, D.C., F.C.C., also entered an appearance for appellee.

Lee J. Peltzman, with whom Robert L. Olender, Washington, D.C., was on the brief, for intervenors.

Before EDWARDS, WILLIAMS and RANDOLPH, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

Concluding over ten years of agency action and litigation, we hold that the Federal Communications Commission fulfilled its burden of reasoned decision making as articulated by this court in *Alegria I, Inc. v. Federal Communication Commission*, 905 F.2d 471 (D.C.Cir.1990) ("*Alegria I*"), and we therefore affirm the FCC's final decision below. The complicated history of the case is outlined in *Alegria I*. See *id.* at 472–74. In a nutshell, Alegria I, Inc. ("Alegria"), an applicant for a new AM radio station, challenged the Commission's decision not to dismiss the mutually exclusive application submitted by Heritage Communications, a competing applicant, after Heritage submitted certain amendments to its application. Alegria invoked 47 CFR § 73.-3571(j)(1), in which the Commission states that it will assign an application a new file number and move it to the end of the Commission's processing line, effectively killing the application, if after a certain deadline the applicant files certain types of amendments. These disqualifying amendments are generally known as "major" amendments, although § 73.3571(j)(1) does not use that term for all amendments that disqualify.

According to the Commission's decision in *Golden Shores Broadcasting, Inc.*, 2 FCC Rcd 4743 (1987), however, the Commission may, in the interest of maximizing the size of the pool of applicants for a new station, refuse to accept a disqualifying amendment, thus preserving an applicant's eligibility. In the earlier stage of this case, *Alegria I*, we remanded to the FCC to explain whether and how its treatment of Heritage's amendments fitted within the *Golden Shores* policy.

Following our remand, the Commission took comments from Alegria, Heritage, and its own Mass Media Bureau. The Commission then issued its Memorandum Opinion and Order, *In re Applications of Alegria I, Inc. and Heritage Communications*, 5 FCC Rcd 7309 (1990) ("Memorandum Opinion"). It explained that while the facts in this case did not exactly match those in *Golden Shores*, nevertheless its treatment of each of Heritage's amendments was consistent with *Golden Shores* and the Commission's policy underlying it. *Id.* at 7311, 7312. Exonerating Heritage, the Commission stated: "[T]here is no reason to penalize Heritage merely for making good faith attempts to address successively unforeseen changing circumstances. Changing circumstances may, of course, delay processing of applications to some extent, even where an applicant's conduct has been entirely proper." *Id.* at 7311. The Commission made clear that the rule requiring that an applicant submitting a major amendment be removed from the pool of eligible

applicants was a practical one, not to be applied blindly. It observed that "73.-3571(j) was adopted to eliminate the costly and prejudicial delays necessitated by the repetitive reprocessing of applications.... We did not intend that the rule be applied in a draconian manner." *Id.* (citing *Golden Shores*).

The Commission noted that Heritage's April 1982 amendment sought to make two changes, a major one and one that at the time appeared to be minor (a new daytime transmitter site). After the Commission advised Heritage that its April 1982 amendment disqualified it from the pool of eligible applicants, Heritage submitted a second amendment in December 1982, withdrawing the major change in the April amendment but preserving the one appearing to be minor. The Commission accepted Heritage's second, curative amendment. Alegria objects that allowing Heritage's December 1982 amendment failed to restore the *status quo ante.* But *Golden Shores* does not suggest that withdrawal of a disqualifying amendment is permissible only when it has that effect. Rather, it reasoned that such withdrawal should be permissible if "the processing of other applications is not disrupted and no prejudice whatsoever results to other applicants." *Golden Shores Broadcasting, Inc.,* 2 FCC Rcd at 4744. Accordingly, on remand the Commission explained that Heritage's December 1982 amendment restored the *status quo ante* "in all relevant respects," Memorandum Opinion, 5 FCC Rcd at 7312, in that it left in place only "an innocuous aspect of the [April 1982] amendment", *id.* This answer seems entirely sensible to us.

Subsequent events revealed that Heritage's daytime transmitter site proposal (originally made in April 1982 and preserved in the December 1982 amendment) involved possible interference with an existing station, KTRB. Heritage sought to solve that with a July 1983 amendment. That amendment in turn proved to involve interference with the transmitter site proposed by Arby R. Beardslee, another mutually exclusive applicant for the same license that Heritage and Alegria were seeking. In its Hearing Designation Order, the Commission permitted Heritage to withdraw the July 1983 amendment, thus leaving intact the problem of possible interference with KTRB. See Joint Appendix 354, 358. In explaining its refusal to assign Heritage a new number despite this possible interference, the Commission on remand stressed that an impending settlement between Heritage and Beardslee was expected shortly to remove the interference problem and thus allow Heritage to reinstate the July 1983 amendment problemfree. Memorandum Opinion, 5 FCC Rcd at 7312. This indeed ultimately occurred, and Alegria does not challenge the propriety of the Commission's allowing the ultimate amendment.

We hold that the Commission's Memorandum Opinion adequately justifies both challenged aspects of its treatment of Heritage. When all the factual backing and filling is taken into account, the net effect of the Commission's orders was as if it had disallowed *all* the amendments prior to the hearing designation order, and then (as in fact it did) allowed Heritage to make its postdesignation amendment.

We note, however, our confusion with respect to the Commission's interpretation of 47 CFR § 73.3571(j)(1). It provides that an application is to receive a new file number whenever the applicant amends its engineering proposal unless the applicant shows that "allowing the amendment would not involve new or increased interference problems with existing stations or other applications pending at the time the amendment is filed." Here the Commission appeared to assume that the rule encompassed interference with another *mutually exclusive* applicant. As mutually exclusive applications will by definition not both be granted, we can perceive no reason why the Commission should regard such interference as a problem. The language of § 73.3571(j)(1) certainly does not compel the Commission's interpretation. If the Commission has anywhere explicitly adopted such an interpretation and ex-

plained some underlying policy concerns, we do not know of it; Commission counsel at oral argument seemed equally baffled. Puzzling as all this is, however, the fact that one of the Commission's assumptions *against* Heritage was irrational, if such be the case, clearly is no obstacle to our affirming the decision.

*Petition Denied.*