**John DOE, Plaintiff,**

v.

**William H. WEBSTER, Director, Central Intelligence Agency, Defendant.**

**Civ. A. No. 82–2016.**

United States District Court,
District of Columbia.

June 4, 1991.

Mark H. Lynch, Covington & Burling, Washington, D.C., for plaintiff.

Richard Brown, Vincent M. Garvey, Dept. of Justice, Civ.Div., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

AUBREY E. ROBINSON, Chief Judge.

This case was remanded from the United States Supreme Court. At issue is whether plaintiff, John Doe, has a colorable constitutional claim arising out of his discharge from the Central Intelligence Agency.

## I. BACKGROUND

John Doe began employment with the Central Intelligence Agency (hereinafter "CIA") in 1973 as a clerk-typist. His evaluations consistently rated him outstanding or excellent. By 1977, Doe had been promoted to a covert electronics technician.

In January 1982, Doe voluntarily informed a CIA security officer that he was a homosexual. Shortly thereafter, the CIA placed him on paid administrative leave and conducted an investigation concerning the security implications of his homosexual conduct. During the investigation, which involved several interviews and a polygraph test, Doe admitted engaging in homosexual conduct, but denied ever having relations with any foreign national or having disclosed classified information to any sexual partner. Doe was shown the report of the interviews and the test, and he submitted a two-page statement to the Agency commenting on the report.

On April 14, 1982, Doe was informed by the Agency's Office of Security that his homosexuality posed a threat to security, and he was asked to resign. When he refused to do so, the Office of Security recommended to the Director of the CIA that he be dismissed. He was dismissed by the Director's order on May 7, 1982. Doe was advised that the CIA would give him a positive recommendation in any future job search, but if he applied for a job requiring a security clearance, the Agency would inform the prospective employer that it had concluded that his homosexuality presented a security threat.

## II. CONSTITUTIONAL CLAIMS

Doe has three unresolved constitutional claims: (a) he claims that he has an equal protection claim; (b) he claims that he has a right to privacy; and (c) he claims that he has a due process property interest in employment.

### A. *Equal Protection Claim*

 Doe does not have a colorable equal protection claim if the Court finds a rational basis for the termination of his employment. It is widely held that the appropriate level of equal protection constitutional analysis to be employed in cases involving homosexuals is "rational basis" analysis. *See Padula v. Webster*, 822 F.2d 97 (D.C.Cir.1987); *High Tech Gays v. Defense Industrial Security Clearance Office*, 895 F.2d 563 (9th Cir.1990). In those cases, both Courts rejected attempts by the plaintiffs to gain heightened constitutional protections for homosexuals as a suspect or quasi-suspect class. Therefore, the appropriate standard which applies to Doe is not that of "strict scrutiny," but rather "rational basis." If an action or policy is based on a suspect classification such as race, alienage, or national origin, that is when the strict scrutiny standard is applied.[1] When the strict scrutiny standard is applied, the classification will be sus-

---

1. See *Loving v. Virginia*, 388 U.S. 1, 11, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967) (race); *Graham v. Richardson*, 403 U.S. 365, 372, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534 (1971) (alienage); and *Korematsu v. United States*, 323 U.S. 214, 216, 65 S.Ct. 193, 194, 89 L.Ed. 194 (1944) (national origin).

tained only if it is suitably tailored to serve a compelling government interest.

Secondly, classifications which are based on illegitimacy or gender are subject to a "quasi-suspect" classification. There is an intermediate level of judicial scrutiny applied. It will only be upheld if the classification is "substantially related to an important governmental interest." *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

If the classification falls into neither category of suspect nor quasi-suspect class, the rational basis standard is used. The issue then is whether the CIA's decision to terminate Doe's employment, based on his homosexual conduct is rationally related to the CIA's national security responsibilities. If so, the action is presumed to be valid and will be sustained.

Here, the CIA's reason for the discharge was that Doe's homosexual conduct was a threat to national security. Doe must concede that the CIA, as the primary agency responsible for collecting foreign intelligence and protecting the secrecy of information important to our national security, has a legitimate, interest in ensuring that its employees are not susceptible to breaches of security.

In *Padula v. Webster*, 822 F.2d 97 (D.C.Cir.1987), the Court of Appeals recognized that the specialized functions of the Federal Bureau of Investigation, including "counterintelligence duties that involve highly classified matters relating to national security," rationally justified consideration of homosexual conduct that could adversely affect the FBI's responsibilities. 822 F.2d at 104. The rationale that homosexuals may be subject to blackmail and coercion has been recognized in many opinions. See *Padula*, 822 F.2d at 104 (it is not irrational for the [FBI] to conclude that the criminalization of homosexual conduct coupled with the general public opprobrium toward homosexuality exposes many homosexuals, even "open" homosexuals, to the risk of possible blackmail to protect their partners, if not themselves."); *High Tech Gays v. Defense Industrial Security Clearance Office*, 895 F.2d 563, 578 n. 13 (9th Cir.1990) ("We conclude that the targeting of homosexuals by hostile intelligence agencies is a legitimate if not compelling justification.").

As a result, it is evident that the discharge is rationally related to the legitimate government security interest in collecting foreign intelligence and protecting the nation's secrets. Clearly, the CIA has a responsibility to ensure that its employees are not subject to threats and coercion. Homosexuals engaging in homosexual conduct pose a greater security risk than heterosexuals. Doe may be particularly susceptible to blackmail and coercion by hostile intelligence agents to protect himself or his partners even if he has admitted his homosexuality to friends and family. The fact is that homosexual conduct is a characteristic that hostile intelligence services are likely to target, and at least some homosexuals may be coerced or manipulated.

Doe asserts that because heterosexuals may also be subjects of hostile intelligence coercion, it is irrational to assume that homosexuals are more likely than heterosexuals to pose a security risk. However, in *High Tech Gays*, the Court recognized that foreign services do in fact target homosexuals for possible exploitation. The CIA should not be required to ignore homosexual conduct when assessing the risk of that conduct on their employees. Thus, the termination of CIA employment, based on admitted homosexual conduct, is rationally related to the Agency's national security concerns. Therefore, Doe does not have a colorable equal protection claim.

B. *Right to Privacy Claim*

Doe does not further pursue a right to privacy claim.

C. *Due Process*

1. *Substantive Due Process—Property Interest*

Doe has a protected property interest in employment at the CIA. A property interest in employment arises when derived from a "reasonable expectation of it," and

there must be "a legitimate claim of entitlement." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Such an entitlement is derived from laws or rules governing the state which secures benefits of employment.

Here, there are three sources which govern Doe's employment. They are the statute—section 102(c) of the National Security Act, 50 U.S.C. § 403(c), CIA regulations, and the agency policy statements and understandings. If Doe derives a property interest from any of the sources, then his employment cannot be taken away without the minimal procedural due process protections he seeks.

### (A.) *Section 102(c) of the National Security Act*

■ The language of section 102(c) allows termination of CIA personnel in the Director's "discretion . . . notwithstanding the provisions of section 7501 of Title 5 or the provisions of any other law . . . whenever he shall deem such termination necessary or advisable in the interests of the United States." The intent of the statute is that employees of the CIA should serve at the pleasure of the Director. CIA employees remain employed at the will of the Director of the agency. The CIA's security purposes warrant extreme carefulness, and the Supreme Court has noted that "employment with the CIA entails a high degree of trust that is perhaps unmatched in government service." *Webster v. Doe,* 486 U.S. 592 at 601, 108 S.Ct. 2047, 2052, 100 L.Ed.2d 632.

However, the statute provides an objective standard: "necessary or advisable in the interests of the United States." Doe argues that the termination must meet that standard, and that creates a property interest in continued employment which is protected by the due process clause.

His argument fails because the standard is not an objective one, but rather a subjective one. The Director determines what is necessary or advisable for United States interests. Here, the Director determined that Doe's homosexual behavior posed a security threat and was a danger to those

interests. Clearly, the language of section 102 and Doe's assertion are inconsistent. If the statute provides the Director with such a great degree of deference, then it cannot supply a reasonable expectation of a property interest in continued employment.

### (B.) *CIA Regulations*

■ Doe asserts that CIA Headquarters Regulation 20–27 provides that non-probationary employees will be terminated only for specific job-related reasons:

(1) failure to meet the work and efficiency standards of the Agency;

(2) failure to meet the security or medical standards;

(3) failure to meet standards of conduct set forth in HR 20–6 (concerning conflicts of interest, acceptance of gifts, and participation in riots and civil disturbances).

(4) abandonment of position;

(5) legal incompetence;

(6) an excess of personnel;

(7) low ratings in performance and potential; or

(8) a determination by the Director of Central intelligence that termination is necessary and advisable in the interests of the Agency or for other reasons contributing to the efficiency of the Agency. HR 20–27(c)–(j).

He argues that the list indicates that there is an expectation that employees will be terminated only for one of the enumerated reasons and that provides a property interest in continued employment.

However, his argument is incorrect on two accounts. First, the reason for his termination falls into categories (2) and (8). The catchall provision of (8) encompasses an appropriate reason for termination even if (2) is arguably inapposite. Secondly, the Court of Appeals specifically rejected the conclusion that CIA regulation 20–27 provides procedural protections. It found that "the CIA regulation [HR 20–27] provides no independent source of procedural or substantive protections." *Doe v. Casey,* 796 F.2d 1508 at 1520 (D.C.Cir.1986). Since those protections are not derived from the

regulation, it cannot be a source of entitlement.

(C.) *Agency–Fostered Understandings*

■ In *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), plaintiff was employed as a professor for ten years in a state college system, the last four of which were under one year contracts. When he was not retained for the following year, respondents alleged that a "de facto tenure policy" existed. The Supreme Court agreed and said that the professor was entitled to a hearing to be informed of reasons for his nonretention. The "understandings" created by the college gave him a property interest in continued employment.

Doe argues that a CIA booklet prepared to familiarize employees and applicants with Agency policies states that "the Agency has the authority to separate involuntarily any employee who, in the judgment of the Director, has failed to carry out his duties responsibly and effectively." He claims that this too creates a property interest in continued employment.

Further, plaintiff claims that CIA officials told him at the outset of his employment that once his probationary period was completed, he would continue to be employed as long as his services were needed, his work was well done, he complied with security regulations, and protected classified information from unauthorized disclosure.

Finally, he argues that the Agency's information booklet contains assurances that the Agency does not concern itself with employees' private lives provided that they do not interfere with their ability to perform their jobs. It states that "Except for the continuing responsibility to avoid disclosure of information affecting national security, Agency employees are under no formal restrictions beyond those governing the conduct of Federal workers as a whole."

These Agency-fostered understandings create a property interest for Doe in his employment. Under *Roth,* it is only necessary to show one source of entitlement to create a property interest in continued employment. Consequently, in light of the arguments above, Doe has demonstrated that he has a protectable property interest in continued employment with the CIA which entitles him to due process protection.

## 2. *Procedural Due Process*

■ In *Ashton v. Civiletti,* 613 F.2d 923 (D.C.Cir.1979), the Court found that a mailroom clerk for the FBI who was a homosexual had a "legitimate expectation of employment" because the FBI rules and regulations said that employees should not be terminated except for a reason related to job performance. As a result, he had a property interest in employment and was entitled to due process protections.

Since it has been established that Doe has a protectable property interest in his employment with the CIA, he can only be fired after receiving the procedural protections of the Due Process Clause. Doe was terminated from the CIA on the basis of a statement that the circumstances of his homosexuality presented a security threat. He was not given the reasons for this determination nor did he have an opportunity to respond. At a minimum, Doe is entitled to notice and a hearing so that he may rebut the allegations. Doe's property interest was violated and he is entitled to fair procedures.

## III. SUMMARY JUDGMENT

Pending for determination are cross-motions for summary judgment. Defendant's motion for summary judgment must be denied. Plaintiff has successfully demonstrated that there is a "genuine issue of material fact" which exists.

Plaintiff asserts that a blanket "policy" exists which bars homosexuals who engage in homosexual activity from employment with the CIA. He says that when he voluntarily informed the CIA of his homosexuality, a security officer told him that his homosexual activities violated CIA regulations. Four days later, another CIA official, who Doe believed to be the Deputy Director of the Office of Security, told him

**6**

the same thing. Based on these statements, Doe asserts that his termination was a foregone conclusion rather than the result of individualized consideration of his homosexual activity.

In conclusion, Doe has substantiated his claim that he is entitled to substantive and procedural due process. As a result, his cross-motion for summary judgment must be granted and the defendant's motion for summary judgment must be denied.