John DOE

v.

**Robert M. GATES, Director of Central Intelligence, Appellant.**

No. 91–5249.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 26, 1992.

Decided Jan. 12, 1993.

Robert M. Loeb, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., Barbara L. Herwig, Atty., Dept. of Justice, and R. Bruce Burke, Atty., C.I.A., Washington, DC, were on the brief, for appellant.

Steven F. Reich, with whom Mark H. Lynch, Washington, DC, was on the brief, for appellee.

William H. Allen, DC, also entered an appearance, for appellee.

Before EDWARDS, SENTELLE, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

Opinion concurring in part and concurring in the judgment filed by Circuit Judge HARRY T. EDWARDS.

Opinion concurring in part and concurring in the judgment filed by Circuit Judge RANDOLPH.

SENTELLE, Circuit Judge:

This is a law suit by a Central Intelligence Agency ("CIA") employee claiming that his constitutional rights were violated when he was terminated for reasons related to his homosexual activity. On remand from the Supreme Court and this Court, the District Court concluded that the agent's equal protection claim was not supported on the record, but that he had a property interest in continued employment warranting due process protection not afforded in the Agency's termination procedures. Based on these conclusions, the Court granted summary judgment in favor of the plaintiff. Because we agree with the first conclusion but not the second, we reverse the grant of summary judgment.

I.

Because many of the facts are laid out by us in our prior opinion, *Doe v. Casey*, 796 F.2d 1508 (D.C.Cir.1986), *cert. denied*, 487 U.S. 1223, 108 S.Ct. 2883, 101 L.Ed.2d 917 (1988), as well as by the Supreme Court, *Webster v. Doe*, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), we will revisit and augment them only as necessary to provide foundation for discussion of the particular issues addressed herein.

The CIA hired John Doe in 1973 as a clerk-typist, and seven years later promoted him to an undercover position. In periodic fitness reports, the Agency consistently rated him as a strong or outstanding employee. Though Doe began engaging in homosexual activities in 1976, he did not inform the CIA of his sexual orientation until January 28, 1982. Shortly thereafter, he was placed on paid administrative leave, and has continued to collect his salary through the course of this litigation.

In May of 1982, the Director of Central Intelligence discharged Doe, pursuant to § 102(c) of the National Security Act of 1947, 50 U.S.C. § 403(c) (1982). That section provides that the Director of Central Intelligence "may, in his discretion, terminate the employment of any officer or employee of the Agency whenever he shall deem such termination necessary or advisable in the interests of the United States." A letter to Doe's counsel from the Deputy General Counsel for the CIA stated that the Director had reached his decision on the basis of a review of the facts in Doe's case, and included a memorandum containing the Office of Security's evaluation of the security significance of those facts.

Doe brought this action against the Director in District Court, seeking injunctive and declaratory relief. Alleging that his discharge was prompted by his admission of homosexuality, Doe asserted that the Director violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (1982), because the decision to fire him was arbitrary, capricious, an abuse of discretion, and had been reached without adhering to procedures required by law and by CIA regulations. In addition, Doe claimed that his discharge violated his constitutional rights to "fundamental fairness," privacy, and equal protection, and deprived him of property and liberty without due process.

The District Court did not reach Doe's constitutional claims, but held that the CIA had violated Doe's procedural rights under the APA by dismissing him without the due process protections afforded by the agency's own regulations. *Doe v. Casey*, 601 F.Supp. 581 (D.D.C.1985). On appeal, this Court held that § 102(c)—which permits the Director in his discretion to fire any employee when he deems discharge necessary or advisable in the interests of the United States—did not preclude judicial review of Doe's termination. *Doe v. Casey*, 796 F.2d 1508, 1513–19 (D.C.Cir.1986). However, we reversed the District Court's holding that Doe's discharge had violated CIA regulations, noting that the regulations clearly intended to protect the discretion granted the Director by § 102(c) of the National Security Act. 796 F.2d at 1519–20.

We concluded that the viability of Doe's remaining claims depended on the Director's intent in invoking § 102(c). If the Director intentionally had invoked § 102(c) without reasons, "there are no grounds to reverse the Director's decision ... and, correspondingly, no bases for requiring the Director to explain his exercise of discretion." 796 F.2d at 1522. However, we held that if the Director had dismissed Doe under § 102(c) because of a CIA blanket policy against hiring homosexuals, then the CIA would have to explain how the policy conforms to the statutory mandate that the policy be "necessary or advisable in the interests of the United States." *Id.* Finally, if the Director acted pursuant to § 102(c) because Doe's homosexuality presented a specific security risk, we noted that Doe's procedural right not to be deprived of his liberty interest in his reputation without due process might be implicated, *id.* at 1522–24, but held that the CIA had already provided sufficient due process to satisfy the Fifth Amendment through its informal notice and opportunity to respond. *Id.*

The Supreme Court granted the government's petition for certiorari on the question whether any judicial review under the APA existed of the Director's decision to terminate an employee under § 102(c).

*Webster v. Doe*, 482 U.S. 913, 107 S.Ct. 3182, 96 L.Ed.2d 671 (1987). In a cross-petition, Doe sought review of whether this Court had erred in holding that he was not entitled to any explanation of the Director's decision to discharge him. The Supreme Court denied his petition. *Doe v. Webster*, 487 U.S. 1223, 108 S.Ct. 2883, 101 L.Ed.2d 917 (1988).

On the government's petition, the Supreme Court held that "§ 102(c) indicate[s] that Congress meant to commit individual employee discharges to the Director's discretion," and that any judicial review under the APA was therefore precluded. *Webster v. Doe*, 486 U.S. 592, 601, 108 S.Ct. 2047, 2052, 100 L.Ed.2d 632 (1988). Nonetheless, the Supreme Court ruled that "colorable constitutional claim[s]" arising out of a discharge were not similarly immune from judicial review. *Id.* at 604–05, 108 S.Ct. at 2054. The Court remanded the case, charging the District Court to "address [Doe's] constitutional claims and the propriety of the equitable remedies sought." *Id.* at 605, 108 S.Ct. at 2054.

On remand, the parties filed cross-motions for summary judgment. The District Court held that although Doe had failed to state a colorable equal protection claim, *Doe v. Webster*, 769 F.Supp. 1, 2–3 (1991), he had a Fifth Amendment property interest in continued employment at the CIA based upon an "agency-fostered understanding." *Id.* at 3–5. The District Court based its finding of an agency-fostered understanding on two sources. First, it pointed to a CIA booklet on Agency policy prepared for incoming personnel which stated both that the Agency has the authority to discharge any employee "who, in the judgment of the Director, has failed to carry out his duties responsibly and effectively," and that "[e]xcept for the continuing responsibility to avoid disclosure of information affecting national security, Agency employees are under no formal restrictions beyond those governing the conduct of Federal workers as a whole." *Id.* at 5. In addition, the District Court relied on Doe's affidavit, in which he averred that unidentified CIA employees told him, at the begin-

ning of his employment at the CIA, that "once his probationary period was completed, he would continue to be employed as long as his services were needed, his work was well done, he complied with security regulations, and protected classified information from unauthorized disclosure." *Id.*

The District Court therefore entered summary judgment in favor of Doe, concluding that the CIA had deprived Doe of his job—in which he had a constitutionally cognizable property interest—without affording him adequate process, requiring "[a]t a minimum" notice and the opportunity for a hearing. *Id.* The government appealed.

## II.

◼ The Supreme Court has long held that the constitutional guarantee of due process extends to protect property interests, broadly defined as the "interests that a person has already acquired in specific benefits." *Board of Regents v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972). Property interests in employment are not themselves constitutionally created; rather, they are derived from independent sources, such as statutes, regulations, ordinances, or "existing rules or understandings ... that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577, 92 S.Ct. at 2709; *Perry v. Sindermann*, 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972). The rules and understandings on which an employee bases his Fifth Amendment claims, however, must create an "objectively reasonable expectation" of continued employment. *Hall v. Ford*, 856 F.2d 255, 266 (D.C.Cir.1988).

Here, § 102(c) of the National Security Act of 1947 "exhibits ... extraordinary deference to the Director in his decision to terminate individual employees." *Webster v. Doe*, 486 U.S. 592, 601, 108 S.Ct. 2047, 2052, 100 L.Ed.2d 632 (1988). Indeed, the Act expressly confers upon the Director the "discretion [to] terminate the employment of any officer or employee of the Agency whenever he shall deem such termination necessary or advisable in the in-

terests of the United States." 50 U.S.C. § 403(c) (punctuation omitted). Nor do the regulations and policies of the CIA contradict the statutory grant of discretion to the Director. *See* CIA Reg. HR 20–27 (1978); *see also Doe v. Casey*, 796 F.2d 1508, 1519–20 (D.C.Cir.1986) ("We cannot imagine how the CIA could have more plainly expressed its intent to protect the discretion granted it by section 102(c)."), *aff'd in part, rev'd in part*, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988).

The District Court held that although the National Security Act does not provide Doe with a property interest in his employment, the Agency handbook and statements allegedly made to Doe at the outset of his employment raised "agency fostered understandings" endowing Doe with a cognizable property interest. 769 F.Supp. at 5. We disagree.

◼ Although such provisions and statements may in some contexts be sufficient to confer a "legitimate claim of entitlement" as defined in *Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709, *see, e.g., Ashton v. Civiletti*, 613 F.2d 923, 928–30 (D.C.Cir.1979), this is not such a case. Understandings which in other circumstances might suggest the existence of a property right cannot do so when they are at odds with "the intent of the legislature regarding the employment entitlements that can be conferred." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983); *see also Batterton v. Texas Gen. Land Office*, 783 F.2d 1220, 1223–24 (5th Cir.), *cert. denied*, 479 U.S. 914, 107 S.Ct. 316, 93 L.Ed.2d 289 (1986); *Bollow v. Federal Reserve Bank*, 650 F.2d 1093, 1099 (9th Cir. 1981), *cert. denied*, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982); *Baden v. Koch*, 638 F.2d 486, 490–91 (2d Cir.1980). The law is clear that if a statute relegates termination decisions to the discretion of the Director, no property entitlement exists, *see Chilingririan v. Boris*, 882 F.2d 200, 205 (6th Cir.1989); *Windsor v. The Tennessean*, 719 F.2d 155, 159 (6th Cir. 1983), *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984), and any employee's statements to the contrary have no

binding force. *See Bollow,* 650 F.2d at 1100; *Baden,* 638 F.2d at 493. "[M]utual understandings and customs [can] not create a property interest for purposes of due process when they are contrary to the express provisions of regulations and statutes." *Id.* at 492; *see also Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 447–48 (2d Cir.1980); *Stone v. Philbrook,* 528 F.2d 1084, 1092–94 (2d Cir.1975); *Fiorentino v. United States,* 607 F.2d 963, 967, 221 Ct.Cl. 545 (1979) ("We find nothing in the Supreme Court or D.C. Circuit decisions to suggest that ... 'agency fostered policies and understandings' could override ... the limitations of express statutes or regulations having the force of statutes...."), *cert. denied,* 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980). Therefore, when government employees offer assurances that conflict with federal law, they do not speak for the United States. *See OPM v. Richmond,* 496 U.S. 414, 424–26, 110 S.Ct. 2465, 2471–72, 110 L.Ed.2d 387 (1990); *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947).

 Whether Doe actually knew of the existence of § 102(c) is irrelevant. Federal employees are chargeable with knowledge of governing regulations or statutes, and "it is well established that anyone who deals with the government assumes the risk that the agent acting in the government's behalf has exceeded the bounds of his authority." *Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d 1093, 1100 (9th Cir.1981); *see also Federal Crop Ins. Corp.,* 332 U.S. 380, 384–85, 68 S.Ct. 1, 3, 92 L.Ed. 10; *Lavin v. Marsh,* 644 F.2d 1378, 1383 (9th Cir.1981) (quoting *Schuster v. Comm'r,* 312 F.2d 311, 317 (9th Cir.1962) ("Congress's legislative authority should not be readily subordinated to the action of a wayward or unknowledgeable administrative official.")). Thus, Doe's reliance on alleged statements by other employees and general provisions in the Agency handbook does not constitute a reasonable "legiti-

mate expectation of continued employment," *Hall v. Ford,* 856 F.2d at 265–66, as required by law.[1]

Because we reject the District Court's conclusion that Doe had a cognizable property interest in continued employment, we must reverse the District Court's grant of summary judgment based on its holding that the termination violated such an interest.

### III.

Doe also asserts a claim that his termination violated the constitutional guarantee of equal protection. He argues that:

> The evidence to be introduced at the trial of this action will show either that: (1) the CIA had a policy barring the employment of known homosexuals; or (2) Doe was terminated based on individualized consideration of his homosexuality. Either way, Doe has a colorable equal protection claim under the lowest level of judicial scrutiny.

Appellant's Br. at 37. We disagree.

 The CIA argues at the outset that this issue is not properly before us. In the Agency's view, Doe forfeited his right to assert this argument when he failed to file a cross-appeal from the decision of the District Court. The Agency's position ignores the relative roles of the two courts at this stage. It is not the memorandum of the District Court accepting the CIA's argument on the equal protection argument and rejecting Doe's that is before us for review. Rather, we review the District Court's order granting summary judgment in favor of Doe and denying summary judgment to the CIA. *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984) ("[T]his Court reviews judgments, not opinions...."); *see also Black v. Cutter Laboratories,* 351 U.S. 292, 297, 76 S.Ct. 824, 827, 100 L.Ed. 1188 (1956); *J.E. Riley Investment Co. v. Commission-*

---

1. We do not address the question whether the Director by a general exercise of his discretion could insert in Agency handbooks some language sufficient to create a property interest, if that discretion were exercised in a manner consistent with the intent of the statute. The general language in the present record indicates no such intent or action by the Director here.

*er,* 311 U.S. 55, 59, 61 S.Ct. 95, 97, 85 L.Ed. 36 (1940) ("Where the decision below is correct it must be affirmed by the appellate court though the lower tribunal gave a wrong reason for its action."); *McClung v. Silliman,* 19 U.S. 598, 603 (6 Wheat.), 5 L.Ed. 340 (1821) ("The question before an appellate Court is, was the judgment correct, not the ground on which the judgment professes to proceed.").

■ In reviewing summary judgment decisions, we decide *de novo* the same question that was before the District Court. That is, we must determine whether there is on the record "no genuine issue as to any material fact." Fed.R.Civ.Proc. Rule 56(c). If so, then we determine whether "the moving party is entitled to a judgment as a matter of law." *Id.* Therefore, with the full record before us as it was before the District Court, we may make that determination on grounds which differ from those upon which the District Court relied. *Cf. SEC v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943) ("[I]n reviewing the decision of a lower court, it must be affirmed if the result is correct 'although the lower court relied upon a wrong ground or gave a wrong reason' ") (citing *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 157, 82 L.Ed. 224 (1937)). *See also Lum Wan v. Esperdy,* 321 F.2d 123, 125–26 (2nd Cir. 1963). *Cf. California Bankers Ass'n v. Shultz,* 416 U.S. 21, 71, 94 S.Ct. 1494, 1522, 39 L.Ed.2d 812 (1974) (noting that "[plaintiffs] are free to urge in this Court reasons for affirming the judgment of the District Court which may not have been relied on by the District Court."). That being the case, while it might have assisted the efficient path of appellate review had appellee filed a cross-appeal, it is not necessary that he do so in order for him to argue that the District Court's decision in denying summary judgment to the agency was correct, albeit for a different reason.

■ Although we find the equal protection argument to be properly before us, we do not find it meritorious. Assuming without deciding that a blanket Agency policy against the employment of homosexuals would violate equal protection rights under the Fifth Amendment to the Constitution, the District Court nonetheless properly allowed summary judgment dismissing Doe's equal protection claim.[2] The record before the District Court, and derivatively this Court, supports the conclusion that the agency is entitled to summary judgment on the claim. Under *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), summary judgment may be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322, 106 S.Ct. at 2552. By that standard, there remains no material issue of fact relevant to the allegations undergirding Doe's equal protection claim. Plainly, the agency will prevail at the summary judgment stage if the evidence discloses no harm to Doe as a result of such policy as he alleges; that is, if Doe's employment was terminated on a basis unrelated to the policy or because no such policy exists in the first place.

Obviously, if no such policy exists, that is, if there is no material issue of fact as to whether the CIA has a blanket policy against homosexuals, no further inquiry is needed. Appellant has pointed us to no evidence, nor have we found any independently, to support the existence of such a policy. Doe did claim in his original affidavit that "a CIA security officer on January 29, 1982 ... told [him] that [his] homosexual activities had violated CIA regulations," and that "on February 2, 1982, another CIA official who, [Doe] believe[d] was the deputy director of the Office of Security, also told [Doe] that [his] homosexual activities had violated CIA regulations." Doe Affidavit of August 23, 1982, ¶ 13. He has at no point claimed that either officer or any other CIA employee told him that all homosexual activities, as opposed to *his clandestine and deliberately concealed*

---

**2.** "The equal protection component of the [F]ourteenth [A]mendment is binding upon the federal government as part of the [F]ifth [A]mendment's due process clause." *Padula v. Webster,* 822 F.2d 97, 101 n. 5 (D.C.Cir.1987).

*activity*, were violations of any blanket policy. If this constitutes evidence of a blanket policy at all, it would seem to be evidence within the contemplation of *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Supreme Court in that case noted that in the context of summary judgment, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted). The single vague paragraph of Doe's affidavit cannot be deemed more than "colorable." Particularly is this so given the period of time Doe has had to accumulate any further evidence to survive the summary judgment motion.

▇▇▇ Otherwise viewed, as the Supreme Court instructed us in *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the nonmoving party "must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587, 106 S.Ct. at 1356 (citations omitted) (emphasis in original). As we interpreted that doctrine in *Bias v. Advantage Int'l, Inc.*, 905 F.2d 1558 (D.C.Cir.1990), once the movant has supported a summary judgment motion by evidence of particular events, the court may properly look to the nonmovant for rebuttal evidence either "from persons familiar with the particular events," or expect the nonmovant to "otherwise cast more than metaphysical doubt on the credibility of the testimony." *Id.* at 1561. Here the movant CIA has come forward with abundant evidence of the nonexistence of any such blanket policy. The unspecific paragraph in Doe's original affidavit offers no evidence from anyone having knowledge of such a blanket policy that such a policy exists. For him to cast more than metaphysical doubt, he should at least have provided some direct evidence of someone having knowledge of that policy asserting it to exist, especially given the time available to him. Absent that, he has cast no more than "metaphysical doubt." Where

the moving party in summary judgment is not the party with the burden of proof,

the moving party's duty to "support" its motion is discharged by its "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." ... Thus, where the non-moving party shoulders the burden of proof at trial, the movant's burden is met by a sufficient "'showing' ... that there is an absence of evidence to support the nonmoving party's case."

*Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1032 (D.C.Cir.1988) (quoting *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553, and Fed.R.Civ.P. 56(c)). This is the case here. A plaintiff suing for an alleged breach of his constitutional rights has an obvious burden of proving the existence of those facts which make out the breach. Here, Doe has pointed to no evidence to show such a breach. Appellant's bare assertion that the evidence at trial would show such a policy is without effect. Once the moving party has discharged its duty under *Celotex* and Rule 56, then the non-movant, having the burden at trial, needs to respond with a showing of "affirmative evidence." *Frito–Lay, Inc.*, 863 F.2d at 1034 (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)). In *Frito–Lay*, appellant's counsel had asserted to the District Court that he possessed "a whole transcript of sworn testimony in [an] administrative hearing" and that the testimony "create[d] a disputed fact on" the pivotal issue in the case. 863 F.2d at 1036. We rejected appellant's claim, noting that appellant had not introduced the testimony into the District Court's record at summary judgment, and that we could not speculate "on what would have been the result had appellant done so." *Id.* The same reasoning prevails here. Appellant claims to have evidence, but none was presented before the District Court. The District Court

therefore rightly concluded on summary judgment that there was no evidentiary support for an issue as to the existence of the blanket policy, and correctly granted summary judgment in favor of the Agency on that point.

■ Additionally, even if there were an issue as to such a policy, Doe could not recover unless he could establish that his termination resulted from that policy. Again, the record before the courts supports the District Court's conclusion that the "CIA's reason for the discharge was that Doe's homosexual conduct was a threat to national security." *Doe v. Webster,* 769 F.Supp. at 3. In other words, Doe's termination resulted not from a blanket policy but from the CIA's individualized determination that his own case represented a threat to the national security mission of the Agency. The record establishes that the CIA had a legitimate concern about Doe's trustworthiness, in light of the fact that he hid information about his involvement in homosexual activity despite suspecting or knowing that the Agency considered such involvement to be a matter of security significance. Resp. Br. at 4. Doe came forward voluntarily only because of his perception that his financial interests would be threatened by continued concealment.[3] Further, Doe's oft-expressed concern for the "privacy" of his partners has led the Agency to conclude that he might well be susceptible to threats of exposure directed against his past, present, or future homosexual partners.

As the CIA put it in one sanitized exhibit in the record, "the Subject has demonstrated that he cannot be trusted by this Agency. For more than five years, even while holding positions which gave him access to sensitive classified information, he hid his involvement in homosexual activity although he knew it was a matter of security significance." Doe points to nothing that would suggest that these reasons are pretextual.

We therefore conclude that enough undisputed evidence exists in the record both to support summary judgment for the CIA on the equal protection claim, and to support the District Court's conclusion that "the discharge is rationally related to the legitimate government security interest in collecting foreign intelligence and protecting the nation's secrets." *Doe v. Webster,* 769 F.Supp. at 3. *See also Padula v. Webster,* 822 F.2d 97, 104 (D.C.Cir.1987) ("It is not irrational for the [FBI] to conclude that the criminalization of homosexual conduct coupled with the general public opprobrium toward homosexuality exposes ... even 'open' homosexuals to the risk of possible blackmail to protect their partners, if not themselves") (punctuation omitted). The District Court properly granted judgment for the CIA.

### IV.

Section 102(c) of the National Security Act of 1947 places termination decisions solely within the discretion of the Director of the Central Intelligence Agency. In light of this fact, John Doe could have derived no expectation of continued employment from "agency-fostered understandings" that would have vested in him a property right protected under the Fifth Amendment. He likewise has failed to demonstrate any issues of material fact that would allow his equal protection claim to withstand the government's motion for summary judgment. We therefore reverse the District Court's holding with respect to Doe's property claim, and affirm the dismissal of his equal protection claim.

*It is so ordered.*

·HARRY T. EDWARDS, Circuit Judge, concurring in part and concurring in the judgment.

I concur in the opinion insofar as it disposes of Doe's due process claim. As to Doe's equal protection claim, I concur only in the judgment. I write separately to

---

3. The pecuniary interest referenced in the evidence before the District Court apparently refers to Doe's fear that if his homosexuality were involuntarily discovered, he would be terminated and might lose benefits which he might be in a better position to protect through voluntary disclosure.

make clear my view that there is no evidence in the record that reasonably supports a claim that the Central Intelligence Agency ("CIA") has a blanket policy against homosexuals. Doe's equal protection claim should be dismissed on that ground alone. The CIA unequivocally has asserted that it has no such blanket policy, and Government counsel repeated this assertion during oral argument before this court. There is absolutely nothing in the record that plausibly suggests otherwise.

Doe points to no evidence that contradicts the Government's position that the CIA discharged him after an individualized assessment of the circumstances of his case, rather than pursuant to a blanket ban. The record plainly does not support a contention that Doe was dismissed because of the mere fact of his homosexuality. Furthermore, Doe has pointed to nothing in the record that might reasonably be viewed to suggest that he suffered disparate treatment in his disciplinary assessment by virtue of his homosexuality. In short, Doe has asserted nothing that might prompt consideration of an equal protection claim.

RANDOLPH, Circuit Judge, concurring in part and concurring in the judgment:

I join the court's opinion to the extent it rejects Doe's due process claim. With respect to Doe's equal protection claim, I join only the portion of the opinion holding that Doe's termination resulted "from an individualized determination that his case represented a threat to the national security mission of the agency."

The court's alternative reason for rejecting Doe's equal protection claim—that Doe failed to present any "evidence" showing that the CIA had a blanket policy against homosexuals—is, to my mind, mistaken. The two statements contained in Doe's affidavit—two CIA officials said his homosexuality violated CIA regulations—surely qualify as evidence. Both constitute admissions by a party-opponent. *See* Fed. R.Evid. 801(d)(2). Are the statements evidence of a blanket CIA policy against homosexuals? My colleagues think not. But at the summary judgment stage the court must (1) believe the evidence of the nonmoving party; and (2) draw all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The reference to "regulations" in the statements Doe recites should therefore be taken to mean internal policy guidelines. Given the general nature of the remarks of the CIA officials, it is logical to infer that they were aimed at homosexuality itself, not just Doe's activities. This is precisely how Chief Justice Rehnquist, in his opinion for the Court in *Webster v. Doe*, 486 U.S. 592, 602, 108 S.Ct. 2047, 2053, 100 L.Ed.2d 632 (1988), read Doe's affidavit. The two statements in the affidavit, the Chief Justice wrote, support Doe's claim that a "pervasive discrimination policy exists in the CIA's employment practices regarding *all* homosexuals." 486 U.S. at 602, 108 S.Ct. at 2053. If the Supreme Court's opinion in this regard is not the law of the case, it is something sufficiently similar to warrant our respect.

The problem here is not that Doe presented "no evidence," but that he may not have presented enough. As the nonmoving party having the burden of proof at trial, Doe had to counter the CIA's summary judgment motion with sufficient evidence to enable a jury to return a verdict for him. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. The test is basically the same as that governing motions for directed verdicts or judgments n.o.v.—"if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2511 (citation omitted). The statements in Doe's affidavit probably fall short, but there may be more to consider. Doe also relied upon evidence reported in *Dubbs v. CIA*, 866 F.2d 1114 (9th Cir.1989). *See* Memorandum of Points and Authorities in Support of Plaintiff's Cross–Motion for Partial Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment, at 21–22 (June 25, 1990). *Dubbs* held that the plaintiff there had presented suffi-

cient evidence to survive summary judgment on her claim that she had been denied a security clearance in 1981 pursuant to a CIA anti-homosexual policy. The court of appeals cited a March 1981 letter to the plaintiff from the Director of Security for the CIA and the "testimony" of a former CIA Security Director.

The events recounted in *Dubbs* took place nearly at the same time as the events in Doe's case. Can Doe rely on the evidence recounted in the *Dubbs* opinion? Rule 56(c), Fed.R.Civ.P., provides that district courts should base their evaluation of material facts claimed to be in dispute on "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." The recitation of evidence in a judicial opinion is not within any of these categories. But courts routinely consider "any material that would be admissible or usable at trial." 10A C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE & PROCEDURE § 2721, at 40 (2d ed. 1983), and, according to some authorities, courts considering a motion for summary judgment may appropriately take judicial notice of the record of "other cases involving the same subject matter." *Id.* § 2723, at 67. If we followed this approach (the issue is unresolved in this circuit), the statements set forth in *Dubbs* would have to be considered. Properly authenticated, these statements would be admissible in Doe's trial on the issue of the existence of a CIA blanket policy. The court of appeals in *Dubbs* held that the statements alone were enough to get to a jury on the blanket policy issue (*see* 866 F.2d at 1119). The *Dubbs* evidence plus the evidence in Doe's affidavit would surely be enough to get the blanket question to the jury in Doe's case, assuming—as I do, but only *arguendo*—that discrimination on the basis of homosexuality violates the Constitution.

But these questions regarding the sufficiency of Doe's affidavit and what material may be taken into account on motions for summary judgment (and the constitutionality of the alleged CIA policy) are unnecessary to decide in this case. As the majority opinion holds, Doe was fired, not because of any blanket CIA policy, but for decidedly individualized reasons. That disposes of his equal protection claim. I would rest the judgment on that alone.