John DOE

v.

William WEBSTER, Director Central
Intelligence, et al., Appellants.

No. 91–5249.

United States Court of Appeals,
District of Columbia Circuit.

March 23, 1993.

Before: MIKVA, Chief Judge, and
WALD, EDWARDS, RUTH BADER
GINSBURG, SILBERMAN, BUCKLEY,
WILLIAMS, D.H. GINSBURG,
SENTELLE, HENDERSON and
RANDOLPH, Circuit Judges.

ORDER

PER CURIAM.

Appellee's Suggestion For Rehearing *En Banc* has been circulated to the full Court. No member of the Court requested the taking of a vote thereon. Upon consideration of the foregoing it is

ORDERED, by the Court *en banc*, that the suggestion is denied.

A statement of Circuit Judge Wald is attached.

*Separate Statement of Judge Wald*

I do not seek rehearing en banc because, despite some problematic language in the opinions, their net effect is not to set a precedent that, to be cognizable under the equal protection component of the Fifth Amendment, discrimination against homosexual federal employees must be done pursuant to a "blanket policy" of the agency. As I read the opinions, two judges found that Doe's claim failed because he could not muster evidence countering the CIA's showing that Doe's dismissal resulted from a rational, individualized consideration of his general trustworthiness. *See Doe v. Gates*, 981 F.2d 1316 (D.C.Cir.1993), Opinion of Judge Edwards at 1324 ("Doe has pointed to nothing in the record that might reasonably be viewed to suggest that he suffered disparate treatment in his disciplinary assessment by virtue of his homosexuality."); Opinion of Judge Randolph at 1326 ("Doe was fired ... for decidedly individualized reasons."). While I have misgivings as to the suitability of this record for summary judgment, I realize that that kind of fact-based issue does not normally warrant en banc consideration.

I am, however, troubled by the broad language in Judge Sentelle's opinion suggesting that "no further inquiry is needed" once the court determines that there is no blanket policy against homosexuals. *See* Opinion of Judge Sentelle at 1322; *see also Doe v. Casey*, 796 F.2d 1508, 1523 (D.C.Cir. 1986) (suggesting in dicta that a dismissal based on *Doe's* homosexuality would not present a colorable constitutional claim). The core challenge in an equal protection suit based on homosexuality is that a person has been treated differently by the government because of his or her sexual orientation. While such disparate treatment may be inflicted pursuant to an agency-wide policy (de jure or de facto), it certainly need not be (and given the changing social and political climate of our times, it is increasingly unlikely to be). The important thing is that a discriminatory action may give rise to an equal protection challenge, whether pursued under a general policy or an individualized determination. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 n. 14, 97 S.Ct. 555, 564 n. 14, 50 L.Ed.2d 450 (1977) ("This is not to say that a consistent pattern of official racial discrimination is a necessary predicate to a violation of the Equal Protection Clause. A single invidiously discriminatory governmental act ... would not necessarily be immunized by the absence of such discrimination in the making of other comparable decisions."); *Bohen v. City of East Chicago*, 799 F.2d 1180, 1187 (7th Cir.1986) ("An equal protection plaintiff ... need not prove a discriminatory policy against an entire class; discrimination against the plaintiff because of her membership in the

class is by itself enough."); *see also Dubbs v. CIA*, 866 F.2d 1114, 1120 (9th Cir.1989) (noting that colorable equal protection claim of homosexual employee depends on allegation of disparate treatment of homosexuals and heterosexuals and implying that individualized consideration is not automatically constitutional).

Although individualized consideration militates toward more rational, and presumptively constitutional, decisionmaking than blanket rules, there is no guarantee that all individualized considerations are per se rational or constitutional, especially where sexual orientation is concerned. Once it is shown that a governmental decision adverse to an individual has been affected to some degree by the individual's sexual orientation or conduct—or, put another way, once it is put in doubt that a similarly situated heterosexual employee would have been treated the same way—the government has the task of proving that its decision, whether based on individualized or generic grounds, is rational and free of constitutional taint. *Cf. Pruitt v. Cheney*, 963 F.2d 1160, 1166 (9th Cir.1991) (once discrimination is demonstrated, the government must show on the record that its decision has a rational basis), *cert. denied*, —— U.S. ——, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992).

Within this context, *i.e.*, my understanding that the holding in *Doe* does not contradict these principles, and, despite some concern with the evidence-specific determinations of the panel, I do not seek rehearing en banc in this case.