Tully v. Life Care Servs.                CV-97-532-SD 02/05/98

UNITED STATES DISTRICT COURT FOR THE

                       DISTRICT OF NEW HAMPSHIRE


<u>Brenda Tully</u>


        v.                              Civil No. 97-532-SD


<u>Life Care Services of</u>
 <u>New Hampshire, Inc.,</u>
 <u>d/b/a RiverWoods at Exeter</u>



                            O R D E R


        In this civil action, plaintiff Brenda Tully alleges federal claims of sexual harassment and gender discrimination under Title VII of the Civil Rights Act of 1964 (codified at 42 U.S.C. §§ 2000e, <u>et seq.</u>) (Count I).  In addition to her federal claims, Tully alleges state-law claims for wrongful discharge (Count II) and negligent infliction of emotional distress due to lack of training and/or supervision by RiverWoods (Count III).

        The court has jurisdiction over the federal question at issue under 28 U.S.C. §§ 1131, 1343(a)(4), and supplemental jurisdiction over the state-law issues pursuant to 28 U.S.C. § 1367.

        Presently before the court is defendant's motion to dismiss Counts II and III of plaintiff's complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., to which plaintiff objects.

## Background

Defendant RiverWoods is a nonprofit residential retirement community located in Exeter, New Hampshire.  Plaintiff Brenda Tully gained employment with RiverWoods on August 1, 1994, as a housekeeper.  She was promoted within a few months of her employment to Head Housekeeper, then to Housekeeping Supervisor. In the two years of her employment, Tully received excellent performance evaluations and pay raises.

Stephen Bellatone[1] became plaintiff's supervisor on June 26, 1996.  Plaintiff contends that Mr. Bellatone made sexist statements such as "a man should be Housekeeping Supervisor," and, further, he "stared inappropriately, placed his hand on her shoulder in a suggestive way, and initiated personal conversations with the plaintiff."  Complaint ¶ 15.  Plaintiff also contends that on August 14, 1996, she met with Bellatone, who stated that her future as Housekeeping Supervisor was "up to her" and that "we" (meaning plaintiff and Bellatone) could meet privately during her upcoming vacation to discuss her job. Complaint ¶ 16.  Tully felt that Bellatone clearly was propositioning her.  She told Bellatone that "she hadn't got where she was professionally by sleeping with the boss, and she

---

[1]In her complaint, Tully identifies her supervisor as Stephen Bellantone.  Defendant's brief, however, refers to him as Stephen Bellatone.  In this order, the court has adopted the latter spelling.

2

was not going to start then." Complaint ¶ 16. Bellatone said nothing in reply to indicate that Tully had misunderstood his intentions.

After this exchange, Noreen Page[2] entered the room. Tully complained to Bellatone and Page that she felt she was being treated differently than one of the male supervisors at RiverWoods with similar experience and responsibilities. Tully further stated to both Page and Bellatone that it seemed as though RiverWoods was encouraging sexual discrimination. Neither party responded to her allegations except to inquire how Tully knew she was being paid less than a male counterpart. Tully went on her vacation. Upon her return, Bellatone informed her that, although her previous evaluation was satisfactory, her job performance was now below standard and she could either accept a demotion to Floor Care Technician or resign as Housekeeping Supervisor. Because she felt she could no longer work for an employer that tolerated discrimination and sexual harassment Tully felt compelled to resign on August 26, 1996.

Plaintiff alleges three counts, of which only Counts II and III are the subject of defendant's motion to dismiss. Count II alleges that plaintiff was discharged in violation of public policy because she refused to engage in an intimate relationship

---

[2]Tully's complaint does not further identify Page.

3

with her boss, Bellatone. Count III alleges that RiverWoods breached its duty to plaintiff by negligently failing to adequately train and/or supervise Bellatone as one of its employees, thereby causing her emotional distress.

## Discussion

### 1. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., is one of very limited inquiry, focusing not on "whether the plaintiff will ultimately prevail, but [on] whether the plaintiff is entitled to offer evidence to support the claims." Douglas v. Coca-Cola Bottling Co., 855 F. Supp. 518, 520 (D.N.H. 1994). See also McLean v. Gaudet, 769 F. Supp. 30, 31 (D.N.H. 1990) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). The court must take the factual averments contained in the complaint as true, "indulging every reasonable inference helpful to the plaintiff's cause." Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1994). See Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989); Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988). The grounds for a Rule 12(b)(6) dismissal "must rest solely on the pleadings." Godfrey v. Perkin-Elmer Corp., 794 F. Supp. 1179, 1185 (D.N.H. 1992) (citing Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir. 1990)). Further, a Rule 12(b)(6) dismissal is appropriate "only

4

if it clearly appears according to the facts alleged that the plaintiff cannot recover on any viable theory." Miller v. CBC Cos., 908 F. Supp. 1054, 1059 (D.N.H. 1995) (citing Garita Hotel, supra, 958 F.2d at 17) (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)). The court must deny a motion to dismiss if the "allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery." Thompson v. Forest, 136 N.H. 215, 216, 614 A.2d 1064, 1065 (1992) (citing Collectramatic, Inc. v. Kentucky Fried Chicken Corp., 127 N.H. 317, 320, 499 A.2d 999, 1000 (1985)). For the reasons that follow, the court grants defendant's motion to dismiss Counts II and III.

### a. Title VII and Wrongful Discharge Claim

Count II of plaintiff's complaint asserts a common-law claim for wrongful discharge. Tully alleges that, although she resigned, she was constructively discharged because gender discrimination and sexual harassment created intolerable working conditions. Under New Hampshire common law, in order to have a valid claim for wrongful discharge, "the plaintiff must show: 'one, that the employer terminated the employment out of bad faith, malice, or retaliation; and two, that the employer terminated the employment because the employee performed acts which public policy would encourage or because he [or she]

5

refused to perform act which public policy would condemn.'" Wenners v. Great State Beverages, Inc., 140 N.H. 100, 103, 663 A.2d 623, 625 (1995) (quoting Short v. School Admin. Unit 16, 136 N.H. 76, 84, 612 A.2d 364, 370 (1992), cert. denied, 116 S. Ct. 926 (1996)). RiverWoods argues that Tully's wrongful discharge claim is precluded by Title VII and therefore must be dismissed.

Defendant's motion to dismiss Count II of plaintiff's complaint for wrongful discharge must be granted based upon the reasoning set forth in Smith v. F.W. Morse & Co., 76 F.3d 413 (1st Cir. 1996). In Smith, the First Circuit relied on and interpreted the New Hampshire Supreme Court case, Wenners v. Great State Beverages, Inc., to hold that the existence of a statutory remedy precludes a common-law claim for wrongful discharge. The First Circuit held that Smith could not maintain a wrongful termination claim based upon her allegation of pregnancy discrimination because Title VII creates a private right of action to remedy such violations. Smith, supra, 76 F.3d at 429.

In this case, Title VII applies and provides a remedy for the plaintiff's allegations of sexual harassment and gender discrimination. See Morrison v. Carleton Woolen Mills, Inc., 168 F.3d 429, 436 (1st Cir. 1997) ("sexual harassment is a form of employment discrimination based on sex in violation of Title VII"). Although Tully suggests that the court should disregard

6

Smith, this court is bound by First Circuit law and will apply its decision accordingly.  Therefore, plaintiff is precluded from bringing a common-law claim for wrongful discharge because Title VII provides a private cause of action to remedy the conduct of which Tully complains.  Defendant's motion to dismiss Count II therefore is granted.


## 2.  Negligent Training or Supervision

The Workers' Compensation Act as codified at New Hampshire Revised Statutes Annotated (RSA) 281-A:8 (Supp. 1997) states in pertinent part, "An employee of an employer . . . shall be conclusively presumed to have accepted the provisions of this chapter and . . . to have waived all rights of action whether at common law or by statute or provided under the laws of any other state . . . ."  Defendant RiverWoods asks the court to dismiss plaintiff's negligent training and supervision claim as barred by the exclusivity provision of the New Hampshire Workers' Compensation Act.  However, plaintiff argues that RiverWoods has misconstrued the complaint in stating that plaintiff's claim is barred as a matter of law under RSA 281-A:8, I, which applies only to claims for personal injuries.  Plaintiff further alleges that in addition to personal injury she suffered "emotional distress, mental and physical anguish, loss of enjoyment of life and loss of income and related benefits," Complaint ¶ 20, and

that such claims for economic injury is not barred by RSA 281-A:8.

To the extent that Tully's claim is for personal injuries or emotional distress, it is barred by the Workers' Compensation Act. This court has repeatedly and consistently ruled that claims for emotional distress, whether negligent or intentional tort, are barred by the exclusivity provisions of the state workers' compensation statute, RSA 281-A:8, I. See Foster v. Wal-Mart, Inc., No. 94-571-JD, slip op. at 6 (D.N.H. Mar. 15, 1996). See, e.g., Sweet v. Hadco Corp., No. 95-576-M, slip op. at 3-4 (D.N.H. Jan. 18, 1996) (citing Miller v. CBC Cos., No. 95-24, slip op. (D.N.H. No. 29, 1995)). Further, it is well established under New Hampshire law that "'[e]motional distress is a personal injury, not subject to recovery in a common law action under [the] state workmen's compensation statute.'" Singleterry v. Nashua Cartridge, No. 94-345-SD, 1995 WL 54440, at *5 (D.N.H. Feb. 9, 1995) (quoting Censullo v. Brenka Video, Inc., 989 F.2d 40, 43 (1st Cir. 1993)). Therefore, plaintiff's claims for personal injury and emotional distress are barred by the workers' compensation law.

Furthermore, the court will not allow a plaintiff to recast what is essentially a wrongful discharge claim as a negligent supervision claim. See Byrd v. Appalachian Mountain Club, No. 95-625-JD, slip op. at 3 (D.N.H. May 13, 1996). This court

believes that allowing a negligent supervision claim when the plaintiff's damages are caused by termination of employment unduly expands the exceptions to the doctrine of employment-at-will. The law presumes, in the absence of an explicit contract, that the employment relation is at-will, and therefore either party may terminate the contract with or without cause. This "rule retains its vitality in circumstances other than those carved out by legislative and judicial exception . . . ." Cloutier v. A & P Tea Co., 121 N.H. 915, 919-20, 436 A.2d 1140, 1142 (1981). Thus exceptions to the rule of employment-at-will must be created explicitly by New Hampshire's court or legislature. Negligent supervision is not such an exception. The New Hampshire Supreme Court has carefully limited the law of wrongful discharge to cases where there is no statutory remedy. This court will not allow a plaintiff to circumvent this limitation by renaming what is essentially a claim of wrongful discharge.[3]

---

[3]Other courts have reached the same result based upon the theory that termination of employment is not a harm legally recognized under tort law. See Hine v. Dittrich, 278 Cal. Rptr, 330, 333 (Cal. Ct. App. 1991); Choroszy v. Wentworth Inst. of Technology, 915 F. Supp. 446, 451 (D. Mass. 1996). Thus, although employment termination may be actionable as a breach of an implied contract, it does not give rise to an action in tort. Under this theory, a terminated employee "can no more turn a contractual wrongful discharge action into a negligent supervision claim than could a terminated employee plead negligence simply because the employer negligently failed to follow prescribed procedures before the firing." Hine, supra,

## Conclusion

For the reasons herein stated, the court herewith grants defendant's motion to dismiss as to Count II and Count III.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

February 5, 1998

cc:  Cynthia A. Dill, Esq.
      Daniel P. Schwarz, Esq.

_____

278 Cal. Rptr. at 333.